# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                              No. CR 06-1015  JB

NATHANIEL FRANCISCO,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objections to the Pre-Sentence Report and Sentencing Memorandum, filed July 16, 2007 (Doc. 30).  The Court held a sentencing hearing on September 6, 2007.  The primary issues are: (i) whether the Court should sustain Defendant Nathaniel Francisco's objection to the amount of restitution assessed against him;  (ii) whether the Court should assign Francisco criminal history points for violating a local ordinance and a state law that prohibits one to Sell or Give Liquor to Minors; (iii) whether the Court should use its discretion to engage in a determination that the correct criminal history category for Francisco is II instead of  III; and (iv) whether an upward departure under U.S.S.G. §§ 5K2.2, 5K2.5 and 5K2.21 is appropriate in Francisco's case.  Because the Court believes that the amount of restitution assessed against Francisco is correct, because the Court believes that the PSR correctly adds criminal history points to Francisco's criminal history score based on his convictions for Sell or Give Liquor to Minors, and because the Court believes that a criminal history category of III accurately represents Francisco's criminal history category, the Court will overrule Francisco's objections to those matters.  The Court will, however, sustain Francisco's objection to upward

departures under U.S.S.G. §§ 5K2.2, 5K2.5 and 5K2.21.  The Court will sentence Francisco to 41 months imprisonment.

## FACTUAL BACKGROUND

Nearly all of Francisco's encounters with the law have involved alcohol.  While his prior convictions are for relatively minor offenses, the crime before the Court involves a fatality.  Thus, the Court's sentence should reflect Francisco's need to deal with the problems that alcohol is causing  in his life and the impact that his problems are having on others in his community.

### 1.     Prior Convictions.

On two occasions, in 1996 and 2000, Francisco was charged with Sell or Give Liquor to Minors in the Gallup Magistrate Court, in Gallup, New Mexico, case numbers M-35-MR-0000516 and M-35-MR-9800546.  See Presentence Investigation Report  ¶¶ 30, 34 at 9-11, disclosed June 4, 2007 ("PSR").  The state court docket sheet received from the Gallup Magistrate Court for Francisco's 1996 conviction, M-35-MR-00516, reflects that Francisco waived his right to counsel on December 20, 1996.  See PSR, Third Addendum at 3, disclosed July 23, 2007 ("Third Addendum").  There is no record  reflecting whether Francisco was represented by counsel  in 2000, for case number M-35-MR-2000378. See PSR ¶ 34, at 11-12.

As a result of his 1996 conviction for Sell or Give Liquor to Minors, Francisco was ordered, on June 8, 1998, to pay a $50.00 fine.  See Third Addendum at 3.  A term of imprisonment was not imposed.  See id.  As a result of his 2000 conviction for Sell or Give Liquor to Minors, Francisco was ordered, on June 5, 2000, to pay a $50.00 fine.  See Third Addendum at 4.  No other punishment was imposed.  See id.  Francisco was assessed one criminal history point for each of these incidents in the PSR.  See PSR ¶¶ 30, 34 at 9-11.

2.    **The Background of the Federal Crime**.

On March 4, 2006, Eddie and Marie Yazzie stopped by Nathan Francisco's house looking for someone to drive them to T&R Market to buy wood.  See PSR, Addendum, Nathan Francisco's written statement of acceptance of responsibility, at 1, disclosed June 29, 2007 ("First Addendum"). According to Francisco, both Eddie and Marie had been drinking and knew that they were unable to drive.  See id.  Francisco contends that, at the time the Yazzies asked him to drive them, he had not been drinking.  See id.

The Yazzies are Francisco's clan relatives.  See id.  Francisco agreed to drive them to T&R Market.  See id.  On the way to T&R Market, the three stopped at Sage Brush and bought a twenty-four pack of beer and a fifth of peppermint schnapps.  See id.

Francisco and the Yazzies drank the alcohol on the way to T&R Market, and continued to drink after they left the market.  See id.  After leaving T&R Market, Francisco and the Yazzies drove to Smith's to buy more peppermint schnapps and beer.  See id.  As they were driving home, Francisco lost control of the wheel and caused the vehicle to roll over.  See PSR ¶ 7, at 3.  When the police arrived at the scene of the accident, the officer made contact with Francisco, who showed signs of intoxication.  See PSR ¶ 8, at 3.  After refusing to submit to a series of field sobriety tests, Francisco was placed under arrest for public intoxication.  See id. ¶ 8, at 3.  At the Window Rock Detention Center, Francisco submitted to a breath-alcohol test, which revealed that his blood alcohol content was .181%.  See id.

As a result of the accident, Marie Yazzie suffered fatal injuries and died later that night.  See id. ¶ 10, at 4.  Eddie Yazzie suffered a fractured pelvis, fractured left hip, ruptured bladder and was in a coma until March 14, 2006.  See id. ¶ 11, at 4.  Eddie Yazzie underwent multiple surgeries to repair his injuries and was hospitalized for a substantial period of time.  See id.

# PROCEDURAL BACKGROUND

The United States Probation Office ("USPO") disclosed the PSR on June 4, 2007.  See PSR at 1.  Subsequent to the disclosure of the PSR, the Probation Officer filed three addendums to the PSR.  See First Addendum; PSR, Second Addendum, disclosed July 6, 2007 ("Second Addendum"); Third Addendum. Francisco filed his Objections to the Presentence Report and Sentencing Memorandum on July 16, 2007.  See Defendant's Objections to the Presentence Report and Sentencing Memorandum, filed July 16, 2007 (Doc. 30).  Francisco also filed Objections to the Third Addendum to the Presentence Report.  See Defendant's Objections to the Third Addendum to the Presentence Report, filed July 25, 2007 (Doc. 31).

## 1.     Francisco's Objections.

There is no dispute that the USPO in the PSR, pursuant to U.S.S.G. § 2A1.4, involuntary manslaughter, has properly determined that the base offense level is 22.  See PSR ¶ 20, at 7; Transcript of Hearing at 6:3-8, taken September 6, 2007 ("Tr.")(Court & Finzel).[1]  Francisco's counsel, however, raises various objections to the PSR.  See Defendant's Objections to the Presentence Report and Sentencing Memorandum; Defendant's Objections to the Third Addendum to the Presentence Report, filed July 25, 2007 (Doc. 31).  Francisco objects to the following issues in the PSR: (i) the restitution amount against him and the fact that the Yazzie's insurance company has failed and/or refused to pay any liability coverage; (ii) the recommendation of an upward departure by the USPO under U.S.S.G. §§ 5K2.2, 5K2.5 and 5K2.21 because the rationalization for that increase has been taken into account in the base offense level of 22; (iii) the criminal history points assessed in paragraphs 30 and 34 of the PSR for the offenses of selling or giving liquor to

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

minors; (iv) the criminal history point assessed in paragraph 30 because the defendant was uncounseled and did not make a knowing and voluntary waiver of his right to counsel; and (v) Francisco's criminal history category of III because it over represents his criminal history.  See Defendant's Objections to the Presentence Report and Sentencing Memorandum at 1-11.

Francisco's counsel also previously filed informal objections with the USPO.  See Defendant's Objections to the Presentence Report and Sentencing Memorandum at 1.  Specifically, in two informal letters from Francisco's counsel to the Probation Officer, Francisco objected to the $4,150 owed to a towing company for storage of Marie Yazzie's damaged car.  See Second Addendum at 1.  The USPO has adopted this informal objection as a valid objection.  See id. The USPO filed a Second Addendum to the PSR removing the storage charges of $4,150.00 for the wrecked pickup truck, leaving a total restitution amount of $17,310.31. See id.

### 2. **Restitution**.

When Francisco brought to the USPO's attention the problem with the insurance company not paying on the Yazzie's claim, the USPO contacted the insurance company and was informed that the insurance company would not pay medical or property loss on the policy.  See Third Addendum at 1.  The insurance company first said that, because Francisco was driving and was not an insured under the policy, the insurance company would not pay anything.  See Defendant's Objections to the Presentence Report and Sentencing Memorandum at 2. Upon the objection of Francisco's counsel, the USPO  contacted the insurance company in Gallup, New Mexico.  See id.

The insurance company then told the Probation Officer that it did not pay because Ms. Yazzie only had liability coverage on the vehicle.  See id. The insurance company further said that, because the incident involved a single vehicle with only liability coverage, and because Ms. Yazzie gave Francisco permission to operate the vehicle, the company refused to pay any of the damages

or medical expenses.  See id.  To date, as the USPO has reported the situation, the insurance company has given inconsistent answers for its refusal to pay. See id.  Francisco asserts this objection to compel a resolution in this matter and out of concern that the Yazzie's insurance company is wrongfully denying the Yazzies benefits to which they are entitled.  See id. at 3.

      3.    **Criminal History Category Calculation.**

In paragraph 30 of the PSR, the USPO assessed Francisco 1 criminal history point for the following conviction: Count 1, Sell or Give Liquor to Minors, as charged in the Gallup Magistrate Court, in Gallup, New Mexico, case number M-35-MR-000516.  See PSR ¶ 30, at 9-10.   In paragraph 31 of the PSR, the USPO assessed Francisco 1 criminal history point for Count 1, Attempt False Imprisonment.  See PSR ¶ 31, at 10.   In paragraph 34 of the PSR, the USPO assessed Francisco 1 criminal history point for Count 1, Sell or Give Liquor to Minors.  See PSR ¶ 34, at 11-12.  In paragraph 25 of the PSR, the USPO assessed Francisco 1 criminal history point for the conviction of Driving While Intoxicated (1st Offense).  See PSR ¶ 25, at 12.  Francisco has a total of 4 criminal history points, which establishes a criminal history category of III.  See PSR ¶ 36, at 12.

Francisco's base offense level is 22.  See PSR ¶ 20, at 7.  With his three-point deduction for his acceptance of responsibility, Francisco's total offense level is 19.  See PSR ¶ 27, at 8.  His criminal history category is III.  See PSR ¶ 36, at 12.  The Guideline Sentence range for Francisco is 37 to 46 months.

## NEW MEXICO LAW REGARDING SELLING OR GIVING LIQUOR TO MINORS AND PUBLIC INTOXICATION

New Mexico state law precludes persons from selling or giving liquor to minors. See N.M.S.A. 1978 § 60-7B-1. New Mexico state law also allows a municipality, by ordinance, to

prohibit public intoxication. <u>See</u>  N.M.S.A. 1978 § 3-18-17.  The issue here is whether a local ordinance for selling or giving liquor to minors is lesser to the state crime of Selling or Giving Liquor to Minors or similar to the crime of Public Intoxication.

       **1.**        **Selling or Giving Liquor to Minors.**

New Mexico Statute § 60-7B-1 regarding the violation Sell or Give Liquor to Minors states:

> It is a violation of the Liquor Control Act for a person, including a person licensed pursuant to the provisions of the Liquor Control Act, or an employee, agent or lessee of that person, if he knows or has reason to know that he is violating the provisions of this section, to:
>
> (1) sell, serve or give alcoholic beverages to a minor or permit a minor to consume alcoholic beverages on the licensed premises;
>
> (2) buy alcoholic beverages for or procure the sale or service of alcoholic beverages to a minor;
>
> (3) deliver alcoholic beverages to a minor; or
>
> (4) aid or assist a minor to buy, procure or be served with alcoholic beverages.

N.M.S.A. 1978 §  60-7B-1.

       **2.**        **Public Intoxication.**

New Mexico Statute § 3-18-17 regarding the violation of Public Intoxication states:

> A municipality may by ordinance:
>
> A. define a nuisance, abate a nuisance and impose penalties upon a person who creates or allows a nuisance to exist;
>
> B. regulate or prohibit any amusement or practice which tends to annoy persons on a street or public ground; and
>
> C. prohibit and suppress:
>
> (1) gambling and the use of fraudulent devices or practices for the purpose of obtaining money or property;
>
> (2) the sale, possession or exhibition of obscene or immoral publications, prints,

pictures or illustrations;

(3) public intoxication;

(4) disorderly conduct; and

(5) riots, noises, disturbances or disorderly assemblies in any public or private place.

N.M.S.A. 1978 § 3-18-17.   According to Black's Law Dictionary, public intoxication is the appearance of a person, who is under the influence of drugs or alcohol, in a place open to the general public.  See Black's Law Dictionary 663 (7th ed. 2000).

### LAW REGARDING RELIANCE ON UNCOUNSELED MISDEMEANOR CONVICTIONS AT SENTENCING

A defendant whose previous conviction is constitutionally invalid because he was denied the right to counsel may challenge the use of that conviction to enhance his sentence under the Guidelines. See United States v. Cruz-Alcala, 338 F.3d 1194, 1196-97 (10th Cir. 2003). Because, however, a "presumption of regularity" attaches to final judgments, even those that implicate the waiver of constitutional rights, Parke v. Raley, 506 U.S. 20, 29 (1992), "[o]nce the government establishes the existence of a prior conviction, . . . it becomes the defendant's burden to prove by a preponderance of evidence that the conviction was unconstitutional," United States v. Quintana-Ponce, 129 Fed. Appx. 473, 475 (10th Cir. 2005).

The Supreme Court has held that, under the Sixth and Fourteenth Amendments, a defendant may not be sentenced to a term of imprisonment unless he has been afforded the right to assistance of counsel in his defense. See Scott v. Illinois, 440 U.S. 367, 373-74 (1979); United States v. Cousins, 455 F.3d 1116, 1125-26 (10th Cir. 2006). The right to counsel, however, "does not extend to non-felony trials if no term of imprisonment is actually imposed." M.L.B. v. S.L.J., 519 U.S. 102, 113 (1996). Consistent with that understanding, "an uncounseled misdemeanor conviction, [in

-8-

association with which] no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." Nichols v. United States, 511 U.S. 738, 748-49 (1994). See United States v. Jackson, No. 06-2079, 2007 WL 1969678, at *3 (10th Cir. July 9, 2007)(quoting Nichols v. United States, 511 U.S. at 749); U.S.S.G. § 4A1.2 cmt. background ("Prior Sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences where imprisonment was not imposed.").

With respect to uncounseled misdemeanor sentences, the Supreme Court of the United States, in Nichols v. United States, 511 U.S. 738 (1994), held that a court may rely upon an uncounseled conviction, even where no sentence of imprisonment is imposed for that conviction, to enhance a sentence for a subsequent offense, even though that later sentence entails imprisonment. See id. at 746-47. The Nichols Court stated:

> Reliance on such a conviction is also consistent with the traditional understanding of the sentencing process, which we have often recognized as less exacting than the process of establishing guilt. . . . Traditionally, judges have considered a wide variety of factors in addition to evidence bearing on guilt in determining what sentence to impose on a convicted defendant. One such important factor . . . is a defendant's prior convictions.

Id. at 747. Reflecting the Court's holding in Nichols v. United States, the background note to U.S.S.G. § 4A1.2 states: "Prior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences where imprisonment was not imposed." U.S.S.G. § 4A1.2.

## LAW REGARDING THE COUNTING OF MISDEMEANORS AND PETTY OFFENSES IN CALCULATING CRIMINAL HISTORY

U.S.S.G. § 4A1.2(c)(1) provides that sentences for all felony offenses are counted in computing criminal history, and sentences for misdemeanor and petty offenses are counted except that "[s]entences for the [enumerated] prior offenses and offenses similar to them . . . are counted

only if:" (i) the state court imposed a term of probation of one year or a thirty-day sentence of imprisonment; (ii) or if "the prior incident was similar to an instant offense."   U.S.S.G. § 4A1.2(c)(1).

> Pursuant to § 4A1.2(c)(2):
>
> Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:
>
> [i] Fish and game violations
>
> [ii] Hitchhiking
>
> [iii] Juvenile status offenses and truancy
>
> [iv] Local ordinance violations (except those violations that are also violations under state criminal  law)
>
> [v] Loitering
>
> [vi] Minor traffic infractions (e.g., speeding)
>
> [vii] Public intoxication
>
> [viii] Vagrancy.

See U.S.S.G. § 4A1.2(c)(2).  Thus, local ordinance violations, that are also criminal offenses under state law, are included in computing criminal history.  See id.

In United States v. Cox, 934 F.2d 1114 (10th Cir. 1991), the United States Court of Appeals for the Tenth Circuit concluded that a prior misdemeanor conviction for menacing was not similar to a minor traffic infraction or disorderly conduct.  See id. at 1124.  The Tenth Circuit wrote: "Menacing is a crime against the person . . . and disorderly conduct is a crime against the public peace, order, and decency."  Id.  The Tenth Circuit cited two Colorado statutes and abstracted from the statutes' elements to distinguish them by their essential characteristics. See id.

Similarly, in United States v. Norman, 129 F.3d 1393 (10th Cir. 1997), the Tenth Circuit

found a prior conviction for "harassment" was not, for purposes of § 4A1.2(c), similar to "disorderly conduct" or "disturbing the peace." 129 F.3d at 1400-1401. The Norman panel quoted the language of the municipal ordinance prohibiting harassment to emphasize that it was directed at punishing actions taken against a specific person. "Disorderly conduct" and "disturbing the peace," in contrast, are crimes against public peace, order, and decency. Id. at 1401. Again, the Tenth Circuit based its conclusion that the prior conviction was not similar to the listed offenses by examining the essential characteristics of each. See id.

By the time that the Tenth Circuit decided United States v. Perez de Dios, 237 F.3d 1192 (10th Cir. 2001), the circuits had developed two different approaches. The Second, Fifth, and Seventh Circuits all used some sort of multi-factor test, the most popular being from the Fifth Circuit case United States v. Hardeman, 933 F.2d 278, 281 (5th Cir. 1991). In United States v. Hardeman, the Fifth Circuit considered "[1] a comparison of punishments imposed for the listed and unlisted offenses, [2] the perceived seriousness of the offense as indicated by the level of punishment, [3] the elements of the offense, [4] the level of culpability involved, and [5] the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." Id. at 281. See United States v. Martinez-Santos, 184 F.3d 196, 200 (2d Cir. 1999); United States v. Booker, 71 F.3d 685, 689 (7th Cir. 1995).

The First, Third, and Fourth Circuits use an "elements approach," which compares the legal elements of the prior and current offenses. See, e.g., United States v. Unger, 915 F.2d 759, 763 (1st Cir. 1990)("[W]e should look to the substance of the underlying offense in order to determine whether it falls within the proscription.").

In United States v. Perez de Dios, Perez de Dios argued that his misdemeanor conviction for driving without proof of insurance should not be counted when calculating his criminal history

category under the Sentencing Guidelines.  See 237 F.3d 1192 at 1196.  The Tenth Circuit stated:

> The policy considerations underlying this section [(c)(2)] of the Guidelines are apparent.  The Commission concluded that the listed offenses under (c)(2) are of such minor significance relative to the goals of sentencing that they are never counted, regardless of the degree of punishment imposed or the similarity between the prior and current offense.

United States v. Perez de Dios, 237 F.3d at 1197 (citing United States v. Hardeman, 933 F.2d at 281)("[T]he purpose of this section of the Guidelines [is] to screen out past conduct which is of such minor significance that it is not relevant to the goals of sentencing.").  The Tenth Circuit then addressed the meaning of "similar" in U.S.S.G. § 4A1.2(c).  See id. at 1197-99.  The Tenth Circuit stated: "We believe the phrase 'by whatever name they are known' in sub-section (c)(1) and (c)(2) directs a court to examine the substance of the compared offenses when deciding whether they are 'similar.'"  United States v. Perez de Dios, 237 F.3d at 1197 (quoting U.S.S.G. § 4A1.2(c)).  The Tenth Circuit read the "they" in "by whatever name they are known" as applying across the conjunction "and" to both "prior offenses" and "offenses similar to them."  United States v. Perez de Dios, 237 F.3d at 1197.  The Tenth Circuit stated that "the Commission was instructing courts not to place undue emphasis on nomenclature but instead to examine whether the underlying behavior necessary to commit the prior misdemeanor shares the same general characteristics as the behavior required to commit an offense expressly listed under . . . (c)(2)."  Id. The Tenth Circuit then reviewed its past opinions on the subject, stating: "This court, in its three published decisions involving this issue, has intuitively and without discussion looked to the essential characteristics of the underlying conduct when comparing offenses under § 4A1.2(c)."  United States v. Perez de Dios, 237 F.3d at 1197.

The Tenth Circuit in United States v. Perez de Dios then criticized the Second, Fifth, and Seventh Circuits' approach.  See id. at 1198.  The Tenth Circuit stated that, though consideration

of all or some of the listed factors may, in given cases, be helpful, a formulaic approach seemed unnecessary.  See id.  The Tenth Circuit also noted that such multi-factor tests have been criticized for indeterminacy.  See id.; United States v. Harris, 128 F.3d 850, 854-55 (4th Cir. 1997)(discussing how some of the Hardeman factors may lead to uncertainty or confusion).

The Tenth Circuit then adopted a slightly broader inquiry than that used in the First, Third, and Fourth Circuits.  See United States v. Perez de Dios, 237 F.3d at 1198-99.  While acknowledging that the elements approach resembled its essential-characteristics approach, the Tenth Circuit found that the key terms of § 4A1.2(c) -- "similar" and "by whatever name they are known"-- give courts more latitude than merely comparing legal elements of offenses.  Id. at 1198.  The Tenth Circuit noted with approval that the Eighth Circuit has held that "similar" is to be given its "normal" or dictionary meaning -- "[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness." Id.; United States v. Mitchell, 941 F.2d 690, 691 (8th Cir. 1991)(quoting Webster's New International Dictionary (2d ed. 1934)).  See United States v. Harris, 128 F.3d 850, 854 (4th Cir. 1997)("[W]hen two offenses are similar, their essential elements are 'nearly corresponding' or 'resembling in many respects.'").

Applying its essential-characteristics-of-the-crime comparison, the Tenth Circuit in United States v. Perez de Dios concluded that minor traffic infractions, like speeding, are committed by operating one's car in a prohibited manner.  See 237 F.3d at 1199.  The Tenth Circuit noted that the superficial similarity that both offenses involve driving a car was overshadowed by the significant difference that the former is concerned -- not with actually operating an automobile, as is the latter -- but with failing to abide by regulations designed to assure that unsafe drivers are not on the road at all. See id. The Tenth Circuit thus concluded that the defendant was not entitled to the exclusion under (c)(2).  See id.

-13-

In United States v. Correa, 114 F.3d 314 (1st Cir. 1997), the issue was whether the defendant's prior offense of contributing to the delinquency of a minor was a juvenile status offense that had to be excluded from his criminal history score.  See id. at 318-19.  The First Circuit stated that the illustrations of exempted offenses supplied by the Sentencing Commission, e.g., truancy, hitchhiking, loitering, vagrancy, and minor traffic infractions, see U.S.S.G. § 4A1.2(c)(2), furnished a valid point of comparison.  See  United States v. Correa, 114 F.3d at 319.

In United States v. Overholt, 307 F.3d 1231 (10th Cir. 2002), the issue was whether the defendant's prior offenses, which were related to facilitating underage drinking, were properly included in the criminal history calculations at sentencing.  See id. at 1252-53.  The two misdemeanor convictions were: (i) dispersing nonintoxicating alcoholic beverages without a license; and (ii) contributing to the delinquency of a minor.  See id. at 1252.  The Tenth Circuit in United States v. Overholt first noted that the two offenses -- including contributing to the delinquency of a minor -- are not listed in §4A1.2(c)(1) or (2).  See United States v. Overholt, 307 F.3d at 1252. The Tenth Circuit therefore noted that the defendant's challenge could succeed only if his offense was similar to one listed.  See id. The Tenth Circuit noted that, in assessing similarity, it "'examines whether the underlying behavior necessary to commit the prior misdemeanor shares the same general characteristics as the behavior required to commit an offense expressly listed under (c)(1) or (c)(2).'"  United States v. Perez de Dios, 237 F.3d at 1197.

The Tenth Circuit in United States v. Overholt then stated: "[W]e fail to see a listed offense that is plainly similar to either of Overholt's prior offenses." United States v. Overholt, 307 F.3d at 1252.  The Tenth Circuit noted that none of the offenses listed in U.S.S.G. §4A1.2(c) have anything to do with facilitating underage drinking.  See United States v. Overholt, 307 F.3d at 1252. The Tenth Circuit pointed out that the Fourth Circuit has held that the Florida offense of selling alcohol

to a minor is not similar to any of the offenses listed in §4A1.2(c) because it does not share common elements with any of them.  See United States v. Overholt, 307 F.3d at 1252; United States v. Harris, 128 F.3d at 855 ("[N]one involve selling alcohol; none involve transactions with minors.").  The Tenth Circuit acknowledged that the Fourth Circuit's "elements approach" is more restrictive than the Tenth Circuit's approach to similarity, see United States v. Perez de Dios, 237 F.3d at 1198, but stated that it believed its own approach required the same result, see  United States v. Overholt, 307 F.3d at 1252-53.  Accordingly, the Tenth Circuit held that the district court did not plainly err when it included Overholt's prior misdemeanor convictions in his criminal history calculations.  See id. at 1253.

## ANALYSIS

The Court will overrule Francisco's objection to restitution.   The Court will also overrule Francisco's objections to the assessment of additional criminal history points for his convictions of Sell or Give Liquor to Minors and his uncounseled misdemeanor.  The Court will further overrule Francisco's objection to his criminal history score of III.   The Court will sustain, however, Francisco's objection to an upward departure. The Court will sentence Francisco within the advisory guideline range to 41 months imprisonment.

## I.    THE COURT WILL OVERRULE FRANCISCO'S OBJECTION TO THE AMOUNT OF RESTITUTION THAT HE OWES THE VICTIMS' FAMILY.

Francisco's counsel points out that there was insurance on the vehicle involved in the accident, and that the insurance company has failed and/or refused to pay any liability coverage. See Defendant's Objections to the Presentence Report and Sentencing Memorandum at 1-2.  While Francisco states that the matter of money is the least of his concerns, the restitution matter is something that his counsel has raised on Francisco's behalf.  See id. at 1. Francisco's counsel states

that he raises this issue for purposes of compelling a resolution of the insurance matter, and out of concern that the insurance company, with its inconsistent answers, may be wrongfully denying benefits to which the Yazzie family is entitled.  See id. at 1-3.

At the sentencing hearing, Francisco's counsel agreed with the Court that his objection to the amount of restitution assessed against Francisco was mostly to try to encourage the Yazzie family to pursue legal recourse and to get an attorney to see if more could be collected against the insurance company.  See Tr. at 21:14-22:4 (Court & Finzel).  Francisco's counsel indicated that Francisco understood that he needed to pay restitution and was willing to do so.  See id.

Francisco raises this objection to ensure that the Yazzies are not denied coverage to which they are entitled.  See Defendant's Objections to the Presentence Report and Sentencing Memorandum at 3.  Francisco contends that, given Eddie Yazzie's injuries, it would be important that a competent lawyer pursue this matter on Eddie's behalf.  See id.  It is the understanding of Francisco's counsel that Marie Yazzie's family "may or may not be eligible" for liability coverage under her policy.  Id. at 2.  He concedes that the policy could have been written "either way."  Id. at 3.  Nevertheless, he argues that, because Marie Yazzie is the policyholder, Eddie Yazzie, who was seriously injured in the accident, should not be denied liability.  See id. at 3.

Francisco has instructed his counsel to ask the Court and the USPO to pursue this matter so that the Yazzie family can get all that they are entitled to under their insurance policy.  See id. at 3. Francisco contends that an attorney competent in insurance law should review the policy with the Yazzie family to determine if Marie Yazzie is excluded from liability coverage under the terms of the policy.  See id.   At the hearing Francisco reiterated that he was not challenging his obligation to pay restitution or the decision whether he pays the restitution to the insurance company or the Yazzie family; rather, he was asking only for help for the Yazzie family to pursue their insurance

recovery.  See Tr. at 21:21-25 (Finzel).

The Court cannot say, on the record before it, that the Yazzie family is entitled to compensation from the insurance company.  The Court is not familiar with all of the details of the insurance policy and has not been present during any of the conversations that have taken place about the coverage.  The Court, like Francisco, believes it is important for the Yazzie family to receive any insurance coverage to which they are entitled.  For that reason, the Court has detailed Francisco's concern in its opinion.  The Court is unable, however, to assist the Yazzies in pursuing their insurance recovery.

Regardless of the Yazzie's possible insurance recovery, however, Francisco continues to have an obligation to pay restitution.  Francisco has taken responsibility for paying such restitution.  All that Francisco's counsel can do through his objection is point out that the resolution of this insurance issue may or may not impact the restitution.  The amount of restitution owed by Francisco, however, remains the same.  The Court will, therefore, overrule Francisco's objection to the amount of restitution assessed against him.

## II.   THE COURT WILL OVERRULE FRANCISCO'S OBJECTIONS TO THE CRIMINAL HISTORY POINTS ASSESSED TO HIM FOR HIS CONVICTIONS OF SELL OR GIVE LIQUOR TO MINORS.

Francisco objects to the 2 criminal history points assigned in paragraphs 30 and 34 of the PSR.  Francisco's counsel argues that a conviction for Sell or Give Liquor to Minors is similar to Public Intoxication and therefore should not be counted pursuant to U.S.S.G. § 4A1.2(c)(2).  Second, Francisco's counsel objects to the criminal history point given under paragraph 30 of the PSR, because Francisco was uncounseled.  Taking into consideration the Tenth Circuit case law as well as case law from other circuits, the Court does not believe that Francisco's conviction for Sell or Give Liquor to Minors is similar to Public Intoxication and therefore overrules Francisco's objection

-17-

to the addition of the 2 criminal history points for those convictions.  The Court also believes that Francisco made a knowing and voluntary waiver of his right to counsel under paragraph 30 of the PSR and thus overrules Francisco's objection, on that ground, to the assessment of the criminal history point.

A.   **THE USPO PROPERLY SCORED THE MISDEMEANOR OF SELL OR GIVE LIQUOR TO MINORS.**

Francisco argues that his prior convictions for Sell or Give Liquor to Minors should not be counted in his criminal-history score. Francisco argues that the USPO is overreaching the bounds of state law by adding criminal-history points and equating the local ordinance violation of Sell or Give Liquor to Minors to the state-law violation of Sell or Give Liquor to Minors.  See Defendant's Objections to the Presentence Report and Sentencing Memorandum at 8.  Francisco's counsel points out that the state-law offense for Give or Sell Liquor to Minors is not punishable by a term of imprisonment and allowing it to increase Francisco's criminal-history category causes over-representation.  See id. at 9.  Moreover, Francisco contends that his conviction for Sell or Give Liquor to Minors is similar to a petty offense of public intoxication or vagrancy, which the Guidelines state "are never counted." U.S.S.G.  § 4A1.2(c)(2).  Finally, Francisco argues that his conviction for Sell or Give Liquor to Minors that occurred in 1996 should not be counted because he was not represented by counsel and did not make a knowing and voluntary waiver.  See Defendant's Objections to the Presentence Report and Sentencing Memorandum at  8.  The Court does not believe that any of the reasons set forth by Francisco counsel that the prior convictions should not be counted.

Although local ordinance violations are generally not counted under U.S.S.G. § 4A1.2(c)(2), local ordinance violations that are also criminal offenses under state law are exceptions to the rule.

U.S.S.G. § 4A1.2  Application  Note 12 states:

> A number of local jurisdictions have enacted ordinances covering certain offenses
> (e.g., larceny and assault misdemeanors) that are also violations of state criminal
> law. This enables a local court (e.g., a municipal court) to exercise jurisdiction over
> such offenses. Such offenses are excluded from the definition of local ordinance
> violations in § 4A1.2(c)(2) and, therefore, sentences for such offenses are to be
> treated as if the defendant had been convicted under state law.

U.S.S.G. § 4A1.2(c)  app.  n.12.  Thus, if the local ordinance violation of Sell or Give Liquor to

Minors is also a criminal offense under state law, then the PSR correctly calculated the criminal

history computation as including the incidents. Under the direction of U.S.S.G. § 4A1.2, the Court

believes that it is appropriate to look to state law and assess additional criminal history points.

Because New Mexico Statute § 60-7B-1 makes Francisco's conduct a criminal offense under state

law, the assignment of two additional criminal history points for Francisco's convictions is correct.

Francisco also argues that Sell or Give Liquor to Minors is similar to Public Intoxication,

which is included as a misdemeanor that is never counted in calculating criminal history points.  See

U.S.S.G. § 4A1.2(c)(2).  It is the Court's assessment that the two crimes are dissimilar.  Given the

statutory definitions, it is the Court's conclusion that a crime like Sell or Give Liquor to Minors is

more serious than a public nuisance charge like Public Intoxication.  It appears that a crime like Sell

or Give Liquor to Minors is more similar to a crime like Contributing to the Delinquency of a Minor.

Accordingly, the Court will count the prior offenses in his criminal history, because they are local

ordinance violations that are also criminal offenses under state law, and do not fit under §

4A1.2(c)(2) as offenses that are never counted in criminal history.

Francisco's counsel also argues that Francisco's 1996 conviction for Sell or Give Liquor to

Minors should not be counted because Francisco was uncounseled, and did not make a knowing and

voluntary waiver of his right to counsel.  See Defendant's Objections to the Presentence Report and

Sentencing Memorandum ¶ 14, at 8.  Francisco contends that the docket sheet for his 1996 conviction of Sell or Give Liquor to Minors does not explain the circumstances behind the waiver. See id.  Given that omission, Francisco requests that the Court not score this conviction a criminal history point.  The Court notes, however, that a "presumption of regularity" attaches to final judgments, even those that implicate the waiver of constitutional rights, Parke v. Raley, 506 U.S. 20, 29 (1992).  "Once the government establishes the existence of a prior conviction, . . . it becomes the defendant's burden to prove by a preponderance of evidence that the conviction was unconstitutional." United States v. Quintana-Ponce, 129 Fed. Appx. 473, 475 (10th Cir. 2005).  In Francisco's case, the court docket sheet received from the Magistrate Court clearly reflects that Francisco waived his right to counsel on December 20, 1996.  See Third Addendum at 3.  The USPO provided Francisco's counsel with the court documentation of the conviction and Francisco's waiver of counsel.  See id.  Additionally, the Court notes that there was no incarceration time given for Francisco's conviction under paragraph 30.  See PSR ¶ 30, at 9.  Rather, Francisco was assessed only a $50.00 fine.  See id.  At the hearing, Francisco's counsel agreed with the Court that it was appropriate to overrule his uncounseled misdemeanor objection and to take the same argument into consideration when determining the appropriate criminal history category for Francisco.  See Tr. at 18:5-16 (Court & Finzel).  Thus, because there is a presumption of regularity that attaches to final judgments, and because the Magistrate Court documents indicate that Francisco knowingly and voluntarily waived his right to an attorney, and because Francisco was not given any prison time, the Court will overrule Francisco's objection and take his argument into consideration when it determines his appropriate criminal history category.

III.   **FRANCISCO'S CASE FITS IN THE HEARTLAND OF CASES AND THUS THE COURT WILL SUSTAIN FRANCISCO'S OBJECTIONS TO UPWARD DEPARTURES UNDER 5K2.2, 5K2.21 OR 5K2.5.**

In the PSR the Probation Officer indicated that the following factors may warrant upward departure in Francisco's case: (i) U.S.S.G. § 5K2.2, Physical Injury; (ii) U.S.S.G. § 5K2.5, Property Damage of Loss; and (iii) U.S.S.G. § 5K2.21, Dismissed and Uncharged Conduct. See PSR ¶ 72 at 20. Francisco objects to upward departures on these bases. See Defendant's Objections to the Presentence Report and Sentencing Memorandum at 4-7. Francisco notes that, effective November 1, 2004, the Sentencing Commission increased the base offense level for reckless operation of a means of travel for involuntary manslaughter to an offense level of 22. See id. Before that time, the base offense levels for involuntary manslaughter were 12, if the conduct was criminally negligent, and between a level 14 and a level 18 when the conduct was reckless. See id. Francisco contends that, by increasing to a base-offense level of 22 in 2004, the Sentencing Commission decided that an offense level of 18 for involuntary manslaughter, while driving drunk, did not adequately reflect the seriousness of the offense level. See id. Francisco also points out that case law before the 2004 amendment considered the fact that the offense level applicable for involuntary manslaughter, while operating a vehicle, was not sufficiently high enough to reflect the seriousness of the offense and the likelihood of property damage or injury to other persons. See id. at 4. Because the offense level was not sufficiently high, Francisco contends that, before the 2004 amendments, upward departures were appropriate in cases of physical injury, property damage or a particularly aggravating nature of the defendant's conduct. See id. at 4-5. Francisco argues, therefore, that the Sentencing Commission took into account the aggravating factors that had previously not been included in the sentencing Guidelines by increasing the base offense level to 22. See id. at 5. Thus, Francisco contends that the upward departures suggested by the Probation

Officer are inappropriate because those factors were taken into account when the Sentencing Commission raised the base offense level to 22 in 2004.  See id.

The Court is in agreement with Francisco that the Sentencing Commission's increase of the base offense level from 12 to 22, for the offense of reckless operation of a means of travel for involuntary manslaughter, takes into consideration the factors that the USPO suggests warrant an upward departure.  The Sentencing Guideline Commission has been monitoring the need for such an increase in the base-offense level, and the Court believes that the increase in 2004 was the Commission's response to the need for such an increase.  Thus, while the Court thinks that an upward departure is authorized in this case by the plain language of the policy statement, the Court does not believe that Francisco's case differs from other vehicular-homicide cases that this Court, and other courts, have heard and sentenced at a 22 base-offense level.   Thus, the Court does not believe that upward departures under U.S.S.G. §§ 5K2.2, 5K2.5 and 5K2.21 are appropriate.  Many times, when a court is dealing with a case of involuntary manslaughter, it involves physical injury and often multiple categories of it.  Thus, the Court is not able to distinguish this case from other cases similar to it.  This case fits into the heartland of cases, and thus the facts and circumstances of this case do not warrant an upward departure.  The Court, therefore, sustains Francisco's objection regarding the USPO's suggested upward departures.  The Court will not grant any upward departures.

**IV.   CATEGORY III ADEQUATELY REPRESENTS FRANCISCO'S CRIMINAL HISTORY, AND THE COURT WILL THEREFORE OVERRULE FRANCISCO'S OBJECTION TO HIS CRIMINAL HISTORY CATEGORY.**

Francisco argues that a criminal-history category of III over-represents his criminal history.  Francisco notes that he has been given a criminal-history category of III for alcohol related offenses.  See Defendant's Objections to the Presentence Report and Sentencing Memorandum at 8.

-22-

Francisco's criminal history consists of 1 criminal history point for selling or giving liquor to minors in 1996; 1 point for attempted false imprisonment in 1998; 1 criminal history point for selling or giving liquor to minors in 2000; and 1 criminal history point for driving while intoxicated.  See id. at 9.   Francisco argues that, in considering the frequency of his crimes and in considering other defendants who are similarly situated,  a criminal history category of III is too high.  See Tr. at 19:11-16 (Finzel).  Francisco argues that, if the Court considers all of his previous objections regarding his criminal history, Francisco most logically fits into a criminal history category of II, not III.  See id. 19:16-20:1 (Finzel).

The Court notes that Francisco has six misdemeanor convictions for alcohol-related offenses, including DWI.  The Court is thus concerned about the frequency of his contact with law enforcement authorities, the fact that he has been in court on a number of occasions, and that he has received a fairly large number of convictions even though he is not receiving criminal history points for all of them.  The Court believes that Francisco's criminal-history category is correctly calculated because it reflects his behavior in the past and is likely an indication of what his criminal activity will be in the future.  Thus, the Court is in agreement with the PSR's calculation of Francisco's criminal history category.  Accordingly, the Court overrules Francisco's objection to the over-representation  of his criminal history category.

## V.      THE COURT WILL IMPOSE A SENTENCE IN THE MIDDLE OF THE ADVISORY GUIDELINE RANGE.

The Court has taken account not only of the Guidelines but other sentencing goals. Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant. After taking all of these factors into consideration, the Court believes that the punishment that is set forth in the Guidelines

-23-

is appropriate for this sort of offense.  The Court believes that the Commission has worked hard to come up with the right sentences for these crimes which often involve issues of intent and recklessness.  Thus, an upward departure is not warranted in this situation.  The factors pointed out by the USPO -- the seriousness of the physical injury and the existence of multiple injuries to multiple people -- weigh in favor of the Court sentencing Francisco within the Guideline range.

The Court believes that Francisco's crime is a very serious crime, and in this case, his crime cost Mrs. Yazzie her life and caused Mr. Yazzie to experience life-threatening injuries.  And while the Court has decided that Francisco's conduct is taken into account in the Guideline imprisonment range, the Court also believes that Francisco's conduct counsels for something higher than the low end of the Guideline range because of the resulting death and serious injuries.  The Court also believes the fact that Francisco caused a one vehicle accident by driving while intoxicated counsels for a sentence that is not at the very low end of the Guideline range.

The Court believes that a sentence of 41 months reflects the seriousness of the offense and promotes respect for the law.  The Court is pleased to see that Francisco has engaged in post-arrest rehabilitation and acknowledges that this factor may counsel for sentencing Francisco not at the high end of the Guideline range.  The Court also notes that it takes very much into account the letters written to the Court by the Yazzie's family in trying to gauge the seriousness of the impact upon the community in which the Yazzie family members and Francisco live.

The Court also believes that the circumstances of the situation -- that both of the Yazzies were very intoxicated at the time of the car crash -- and that their intoxication could have contributed in some way to this crime, counsels against imposing a sentence at the high end of the Guideline range despite the seriousness of the injuries and the possibility that Francisco could have been charged with more crimes.  Along with considering the family members' letters, the Court has

carefully considered Francisco's acceptance of responsibility and finds his acceptance of responsibility to be very active.  The Court believes that the Guidelines accurately calculate and take into account all of the factors the Court has discussed.

In taking all of these factors into consideration, the Court believes that a sentence in the middle of the Guideline range, of 41 months, is most appropriate.  While a sentence of 41 months is not exactly what the Yazzie family members want or what Francisco wants, the Court believes that it best supports all of the goals of the Sentencing Reform Act.

A sentence of 41 months is a just punishment given the circumstances of the crime and will afford Francisco with adequate deterrence.  This sentence, as well as the alcohol counseling that the Court will recommend Francisco receive in prison, will protect the public from the future danger Francisco might pose to others. The Court believes this sentence to be reasonable and to reflect the concerns and outrage of the family members, as well as the circumstances of the crime and the post-arrest conduct. This sentence is sufficient without being greater than is necessary to comply with the purposes set forth in the Sentencing Reform Act.

**IT IS ORDERED**  that Francisco's objection to the amount of restitution assessed against him is overruled.  The Court will overrule Francisco's objection to the criminal history points awarded to him for his two convictions of Sell or Give Liquor to Minors.  The Court will sustain Francisco's objection to any upward departure under U.S.S.G. §§ 5K2.2, 5K2.5,  or 5K2.21.  The Court will overrule Francisco's objection to his criminal history category of III.  Francisco is sentenced to 41 months incarceration.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
   Acting United States Attorney
Presiliano Torrez
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

*Attorney for the Plaintiff*

Roger A. Finzel
   Assistant Federal Public Defender
Albuquerque, New Mexico

*Attorney for the Defendant*